[Civ. No. 3.   Fourth Appellate District.—November 27, 1929.]

W. H. DOUD, Appellant, v. ROBERT JACKSON, Respondent.

A. S. Maloney and Charles Bagg for Appellant.

LeRoy B. Lorentz for Respondent.

SLOANE, P. J.—This is an appeal by the plaintiff, an attaching creditor, from an order of the Superior Court of San Bernardino County dissolving an attachment. Plaintiff brought suit to recover from defendant the sum of $1375 damages from breach of a contract entered into between plaintiff and defendant.

The complaint alleges that the contract was entered into on the twenty-seventh day of June, 1926, under the terms of which plaintiff purchased from defendant, who was engaged in a business known as the Fontana Fur Industries, sixty-four rabbits, sex does, for breeding purposes, paying therefor the sum of $640. That it was represented to plaintiff that the sixty-four rabbits were does and were bred and would be "cleared" in about thirty days. That the rabbits delivered included sixty-three does and one buck. That it turned out that the sixty-three does were not bred and they had not "cleared" to date of filing suit, November 22, 1926. That by the terms of the contract of purchase it was further agreed that all breeding, feeding, housing and graduating of litters was to be done under the supervision of the defendant, without charge to the plaintiff, and that it was further agreed that defendant would furnish bucks for breeding without charge, and that defendant would purchase from plaintiff all young does at the age of three months at $2.50 per head, and all bucks at the price of 75 cents each.

That plaintiff expended for housing and maintaining said rabbits the sum of $360, in addition to the purchase price paid of $640.

That the representations so made by the defendant to plaintiff "did defraud the plaintiff in the sum of One Thousand three hundred and seventy-five ($1375.00) dollars, $640.00 being the purchase price of said bred does, $360.00

for hutches, $375.00 for care and feed, making a total of $1375.00, representing the amount which plaintiff was compelled to expend and did expend, through the deceit, misrepresentation and fraud practiced by the defendant upon the plaintiff,'' and that the defendant wholly failed to live up to any terms of the agreement entered into with the plaintiff in any manner whatsoever.

That the plaintiff has offered, and does now offer, to return the rabbits in his possession upon the return by defendant of the sum of $1375 so expended by plaintiff, but that defendant has refused to accept said offer.

No demurrer was filed to this complaint, but defendant has answered by a general denial of each of the allegations of the complaint.

After answer filed, plaintiff took out a writ of attachment on the claim set out in the complaint and levied same on property of the defendant.

Defendant was at all times a resident of this state, and the affidavit for attachment is in the form prescribed for attachment against residents, and alleges that ''the defendant is indebted to plaintiff in the sum of $1375.00 over and above all legal set-offs and counterclaims upon a contract for the direct payment of money, and that such contract was made payable in this state and that the payment of the same has not been secured by any mortgage, lien or pledge, upon real and personal property,'' etc.

Thereafter in due time respondent served and filed his notice of motion to have the attachment dissolved and the writ quashed.

A hearing on this motion was on due notice thereafter had on the records and files in the case and upon the affidavit of defendant that he was, and had at all times covered by the proceedings been, a resident of the state of California.

The motion to dissolve attachment was noticed and made on the grounds, among others, that the writ was not issued in an action based upon a contract expressed or implied for the direct payment of money, and that it was not issued in accordance with the provisions of sections 537 and 538 of the Code of Civil Procedure.

That the action is for damages for the fraudulent breach of a contract, and that the damages are unliquidated and cannot be ascertained with reasonable certainty from an in-

spection of the complaint or of the affidavit upon which the attachment is based.

An order granting motion to dissolve attachment was made January 10, 1927, and notice of appeal from said order was served and filed January 11, 1927.

The record on appeal consists of the clerk's transcript and appellant's opening brief. No brief was filed in behalf of respondent.

On oral argument attorney for respondent appeared and stated that he had made no appearance for his client on appeal for the reason that the respondent had refused to advance money for a brief or to go to further expense in the matter. Counsel for respondent suggested, however, that the court was without jurisdiction by reason of the fact that the record had not been certified by the trial judge, and that in any event the attachment had not been kept alive by filing the bond provided for by section 946 of the Code of Civil Procedure.

The transcript was thereafter, by leave of court, certified by the trial judge, and the parties not having availed themselves of leave of court to file further briefs, the matter was ordered submitted.

The respondent, having failed to answer appellant's opening brief, is not entitled to much attention from the court in protecting his rights. It is scarcely fair to the appellate court, no matter what the ultimate rights of the respondent may be, to leave the burden on the court to search out his defense.

We would ordinarily be justified under rule 5 of this court in deciding the case on the statement of facts contained in appellant's brief.

Unfortunately for appellant's case, we do not find from such statement that he is entitled to the reversal of the order appealed from.

It appears from appellant's own statement of the facts that the writ of attachment in question was not issued on a contract for the direct payment of money, but in an action for unliquidated damages for the alleged fraudulent breach of a contract.

It is true, as argued by appellant, that an implied contract to repay money received under a transaction where the consideration has entirely failed is sometimes recog-

nized as a contract for the direct payment of money, which will serve as a basis for attachment proceedings.

But we think this application of the law must be confined to cases where nothing has been received in consideration for the amount sought to be recovered and where the damages may be said to be liquidated and definitely ascertainable under the facts shown.

Appellant's own citations from *Santa Clara Valley Peat Fuel Co.* v. *Tuck,* 53 Cal. 304, and *Willett & Burr* v. *Alpert,* 181 Cal. 652 [185 Pac. 976, 979], point out this distinction.

In the Peat Fuel Co. case the court, referring to the complaint upon which the affidavit for attachment was predicated, says: "We think this is substantially an averment that the defendant had failed and refused to perform any part of the contract; and the action is to recover the money advanced, on the ground that the consideration upon which it was paid had wholly failed. The authorities appear to be uniform to the effect that where a sum of money has been paid upon a consideration which has entirely failed, the law implies a promise to refund it. On the facts stated in the complaint there was, therefore, an implied contract for the direct payment of money, which brings the case within the very terms of the statute defining the cases in which an attachment may issue."

In the case of *Willett & Burr* v. *Alpert, supra,* the order of the trial court discharging the writ of attachment was affirmed. The action was brought as arising under a contract for sale of personal property to recover damages for the failure of the vendor to deliver the full quantity of property called for under the contract, and attachment issued upon an affidavit alleging a contract on part of vendor, the defendant, for direct payment of money. In sustaining the discharge of the attachment, the court says: "But where, as in the present case, there is neither an entire failure of consideration nor a rescission of the contract so as to entitle the vendee to recover back his money, with the result that he is limited to his remedy of damages, or where there has been an entire failure of consideration and the vendee yet elects not to recover his money, but to recover damages, the action does not proceed upon any theory of the defendant having received money which he

should return to plaintiff, and which the law can, therefore, imply a promise on his part to return, and so *indebitatus assumpsit* will not lie.''

In the instant case there cannot be said to have been an entire failure of consideration. The plaintiff received sixty-three of the sixty-four rabbits contracted for, of the designated sex, and while they had not, up to date of suit, fulfilled their family obligations, there is nothing to indicate any organic disability. It would seem a case for damages.

Neither has there been a rescission of the contract. It is true plaintiff offered to return the rabbits on condition he was repaid his money and compensated in damages, but defendant refused to agree to such settlement. If he had, it might reasonably be argued that there would be an implied promise, as well as obligation, to refund the purchase money, as well as to respond in damages for other expenses incurred by plaintiff in an attempt to realize on his contract.

There are two ways of effecting a rescission; one is by consent and agreement of the parties; the other is by serving notice of rescission and action in court to place the parties *in status quo*.

The original contract here involved no promise on the part of defendant to pay money. The breach of the contract by failure of defendant to perform his obligations thereunder, had there been an entire failure of consideration, would, under the decisions, have established an implied contract to refund the purchase money. The failure of consideration, however, being only partial, plaintiff's remedy was either to affirm the contract and sue for damages, or give timely notice of rescission, and enforce the same by proper action. Neither of these would imply an agreement on the part of defendant for the direct payment of money. Where there is a mutual rescission it may be reasonably held that such settlement involves a promise on the part of the defaulting party to refund any amount in money he may have received on the contract.

Appellant probably is also right in his contention that the mere fact that he has joined in his action to recover the purchase price of these rabbits, damages for expenses

incurred in housing and caring for the same, for which he concedes that an attachment lien will not lie, does not affect his right to attach for any part of the demand which is based on a contract to repay the money advanced.

In *Hamilton* v. *Baker-Hansen Mfg. Co.*, 176 Cal. 569 [169 Pac. 238], the Supreme Court has said that where in an action to recover for breach of a contract the affidavit for attachment is predicated on an implied promise to refund money paid on a purchase price, which amount is set out in the affidavit, the fact that the complaint seeks to recover other elements of damage not subject to attachment, does not defeat the attachment for the specified cash repayment. To quote from the opinion:

"The affidavit for attachment states that 'in addition to certain claims for damages for breach of contract hereinafter referred to,· defendant in said action is indebted to plaintiff· in the sum of three hundred and seventy five ($375.00) dollars, upon an implied contract for the direct payment of money' . . .

"The first ground of defendant's motion to dissolve the attachment is that the affidavit does ‘not state the amount of defendant's indebtedness, as required by section 538 of the Code of Civil Procedure, because of the inclusion in the affidavit of the words 'in addition to certain claims for damages for breach of contract hereinafter referred to.' It is claimed that this renders the amount of the indebtedness uncertain. The contention is without merit. The affidavit itself shows very clearly that the sum for which the attachment is sought is $375. The intimation that the plaintiff is also claiming additional damages, for which no attachment is asked, is mere surplusage, and in no way throws any doubt upon the amount for which the attachment is requested."

The affidavit in the present case contains no such segregating clause.

It alleges that "defendant is indebted to him in the sum of one thousand three hundred seventy five ($1375.00) dollars of the United States, over and above all legal set-offs and counterclaims, upon a contract for the direct payment of money"; thus including in the alleged implied contract, not only the $640 in money paid for the rabbits, but the

unliquidated expense incurred, of $360 for hutches and $375 for care and feed.

This subjects the affidavit for attachment under consideration to the objection that the amount of the alleged indebtedness which might be claimed as arising on an implied contract for the direct payment of money, is not stated as required by section 538 of the Code of Civil Procedure.

As the Supreme Court says in the opinion in *Willett & Burr* v. *Alpert, supra:*

"If this distinction between actions for the recovery of money paid because of failure of consideration or of rescission resulting from a breach of contract, and actions for damages for a breach of a contract be not sound, it would follow that *indebitatus assumpsit* would lie in every case of a breach of a contract."

The point suggested by respondent on oral argument that the attachment lien had in any event lapsed by failure to file undertaking on appeal under section 946 of the Code of Civil Procedure becomes immaterial on the affirmance of the order dissolving the attachment, and in any event applies to an appeal from a judgment on the merits when an attachment is involved.

The order appealed from is affirmed.

Marks, J., and Barnard, J., concurred.